THE CITY OF CHAMPAIGN, Plaintiff-Appellee, *v.* RANDALL ELLIOTT, Defendant-Appellant.

Fourth District    No. 15256

Opinion filed July 3, 1979.

Robert J. Waaler, of Champaign, for appellant.

Kurt P. Froehlich, City Attorney, and Kathryn L. Samuelson, Assistant City Attorney, of Champaign, for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

This case comes on appeal following a bench trial in which defendant, Randall Elliott, was found guilty of violating section 13—6(a)(5) of the Fair Housing Ordinance of the city of Champaign. Defendant was fined $100 plus costs.

Defendant filed a motion to dismiss the complaint, alleging that the ordinance was unconstitutionally overbroad. The trial court denied the motion and ruled that the ordinance was constitutional as it applied to defendant.

Prior to trial, the parties stipulated to the facts pertaining to the charge against defendant. Defendant, along with three others, rented a house located at 603 West White Street in Champaign. The owner of the property, Dan Durham, had it listed for sale with a realty firm. Durham asked defendant for permission to permit potential buyers to go into the house to view it at defendant's convenience, and defendant agreed to accommodate Durham.

While the property was listed for sale, Arnetta Rodgers, a black person, was a real estate salesperson. She telephoned defendant and made an appointment with him to show the premises to a prospective buyer at 7:30 p.m. on July 29, 1977. At the appointed time, Ms. Rodgers, along with her husband, Frederick Rodgers, who is also a black person, escorted a white person, John Long, to 603 West White Street. As the three were approaching the house, the defendant placed a sign on the door, visible to the outside, that read: "No Nigras." Defendant did not permit Arnetta Rodgers, Frederick Rodgers, or John Long to go into the house. Therefore, Ms. Rodgers was denied the opportunity to show the property for possible sale. The owner later accepted an offer for the purchase of the house from an individual not represented by Ms. Rodgers.

On August 4, 1977, Ms. Rodgers filed a complaint with the Fair Housing Board, charging the defendant with violation of the Fair Housing

Ordinance of the city of Champaign. After an investigation and a determination that probable cause for the allegations in the complaint existed, the Fair Housing Board held a hearing and found that defendant had violated the ordinance as alleged in the complaint. A report of the Board's findings and recommendations was presented to the Champaign City Council and on December 6, 1977, the mayor and the council directed the city attorney to institute legal action against the defendant.

Upon hearing these facts as stipulated, the trial court found that defendant had violated section 13—6(a)(5) of the Fair Housing Ordinance of the city of Champaign.

On appeal, defendant raises two issues: (1) His acts did not constitute a violation of the ordinance as charged; and (2) the ordinance is unconstitutional. We do not reach defendant's constitutional claim since defendant is correct that his conduct does not violate the section with which he was charged.

The provision for which defendant was found guilty states:

"It shall be an unlawful real estate practice for any person to:

*　*　*

(5) Knowingly act or undertake to act with respect to any real property the disposition of which is prohibited to any person because of race, color, religion, or national origin." Municipal Code of Champaign 1975, §13—6(a)(5).

We hold that defendant's acts do not violate the section under which he was found guilty by the trial court.

■■ The general rule is that a prosecution for a violation of a municipal ordinance to recover a fine from a defendant, while quasi-criminal in nature, is tried and reviewed as a civil proceeding. (*E.g., City of Creve Coeur v. Pelletier* (1977), 45 Ill. App. 3d 59, 358 N.E.2d 1355.) However, an ordinance punitive in nature, as in the present case, must be strictly construed. *Village of Schaumburg v. Petke* (1978), 57 Ill. App. 3d 614, 373 N.E.2d 716.

■■ To be guilty of an unlawful real estate practice under section 13—6(a)(5), the city had to establish that the *disposition* of the property was prohibited to any person because of race, color, religion, or national origin, and that defendant knowingly acted or undertook to act with respect to the property. There is no proof in the record that the *disposition* of the property was prohibited on the basis of the defendant's acts. Presumably, the section was drafted to prevent real estate salespersons from acquiescing in a seller's desire to prohibit the disposition of his real estate to any person because of race, color, religion, or national origin.

By reaching this decision, we do not mean to condone defendant's reprehensible conduct. Perhaps defendant violated some other ordinance

or statute, but we are not faced with that question. The scope of section 13—6(a)(5) does not reach the defendant nor his conduct. The circuit court's holding that defendant violated section 13—6(a)(5) of the Fair Housing Ordinance is therefore reversed.

Reversed.

MILLS and TRAPP, JJ., concur.